**PARKER COLE, P.C.**
Michael R. Parker (SBN 271242)
e-Mail: michael@parkercolelaw.com
Kevin Cole (SBN 321555)
e-Mail: kevin@parkercolelaw.com
6700 Fallbrook Ave, Suite 207
West Hills, CA 91307
Telephone: (818) 292-8800
Facsimile: (818) 292-8337

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LEDESMA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CANNATOPIA GARDENS d/b/a CANA SYLMAR, a California corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO. 2:20-cv-07690<br><br>**CLASS ACTION COMPLAINT**<br>(JURY TRIAL DEMANDED) |

Plaintiff Samuel Ledesma, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## **NATURE OF ACTION**

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Cannatopia Gardens d/b/a Cana Sylmar ("Cana Sylmar")

-1-

CLASS ACTION COMPLAINT

in transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular device and the cellular devices of numerous other individuals across the country, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

## JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this district because Defendant resides in this district and Plaintiff's claims arose in substantial part in this district. Defendant directed the text messages received by Plaintiff into this district by transmitting the messages to a telephone number that is assigned an area code (805) corresponding to a location in this district. Plaintiff received Defendants' unsolicited text messages on his cellular device while present in this district.

## PARTIES

4. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is, and at all times mentioned herein was, a citizen and resident of Los Angeles, California.

5. Defendant Cannatopia Gardens d/b/a Cana Sylmar is a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains, and at all times mentioned herein maintained, its corporate headquarters in Sylmar, California.

6. Defendant DOES 1 to 10 are alter egos, affiliates, related companies, and/or agents of Cana Sylmar, and/or parties otherwise responsible for the actions and omissions alleged herein. At this time, Plaintiff does not know the true names and forms of Does 1 to 10 and therefore sues these defendants by fictitious names. Plaintiff alleges that these Doe defendants are responsible in some manner for the acts and omissions alleged herein and that Plaintiff's damages were caused by these

Doe defendants. Once the true identities and forms of these Doe defendants are ascertained, Plaintiff will amend his Complaint accordingly.

7. Each of the Defendants named herein are and, at all material times, were the agents, subagents, servants, employees, representatives, and/or alter-egos of each other, and purported to act within the scope of such agency, service, employment or representation in performing the acts and omissions averred herein.

8. Each of the Defendants named herein acted in concert with each of the other Defendants as co-conspirators, agents, representatives, employees or servants and are therefore jointly and severally liable for the claims set forth herein, unless otherwise alleged.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

9. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts using an autodialer or prerecorded voice.

10. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

11. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1]

12. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

13. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

14. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

15. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (805) \*\*\*-7271 (the "7271 Number"). The 7271

---

[1] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 2, 2010), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/

-4-

1. Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

16. For over at least the past year, continuing through the present, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS or MMS text messages to the 7271 Number without Plaintiff's prior express written consent, examples of which is depicted in the screenshots below, which was extracted from Plaintiff's cellular device:



-5-

CLASS ACTION COMPLAINT

17. The hyperlinked URLs within Defendants' text messages, including the URL in the above-depicted text messages, were leased or owned, and were operated and maintained, by Defendant or an agent or affiliate of Defendant.

18. The source of the unsolicited text messages that Defendant transmitted is from a telephone number leased by Defendant or Defendants' agent(s) or affiliate(s) and is used for operating Defendants' text message marketing program.

19. Because Plaintiff is alerted by his cellular device, by auditory or visual means, whenever he receives a text message, the unsolicited text messages that Defendant transmitted to Plaintiff's cellular device were invasive and intruded upon Plaintiff's seclusion upon receipt. Plaintiff became distracted and aggravated as a result of receiving Defendants' unsolicited text messages.

20. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff's 7271 Number and to the numbers of the members of the Class defined below occurred using an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(b)(l)(A).

21. Defendant transmitted its text messages to the 7271 Number and to the numbers of the members of the Class defined below using an "automatic telephone dialing system" because its text messages were sent from a telephone number used to message consumers *en masse*; because Defendants' dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and to then dial such numbers, *en masse,* in an automated fashion and without human intervention.

22. And in fact, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other unnamed Class members in an automated fashion and without human intervention, with hardware and software that received and stored lists of telephone numbers to be dialed and then dialed such numbers automatically.

23. The complained of SMS and/or MMS text messages sent by Defendant to the 7271 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the messages in order to advertise and market its goods and services, for the purpose of ultimately selling such goods and services to Plaintiff and other Class members for commercial profit.

24. Whether or not Defendants' text messages to Plaintiff and others similarly situated were sent via an ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant, or any agent or intermediary acting on its behalf, did not comply with, and thus violated the telephone solicitation restrictions in 47 C.F.R. § 64.1200(f).

25. Neither Plaintiff nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit Defendant to transmit text messages to the 7271 Number or to any of the Class's telephone numbers using an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(l)(A).

## CLASS ALLEGATIONS

26. "ATDS Class" Definition. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

All persons within the United States to whom, between August 24, 2016 and the present, one or more text message(s) promoting Defendants' goods or services was sent using an automatic telephone dialing system by Defendant or an affiliate, subsidiary, or agent of Defendant, and who did not provide Defendant prior express written consent to be sent such text message(s).

27. Defendant, its employees, and agents are excluded from the Class.

28. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

29. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

30. This Class Action Complaint seeks injunctive relief and monetary damages.

31. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

32. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

33. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

34. <u>Typicality</u>. Plaintiff was sent at least five text messages from Defendant without providing his "prior express written consent" to be sent such

message(s) from Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

35. <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

36. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel is experienced in handling complex class action claims.

37. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class defined above and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

    a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

b)  Whether such text messages were sent using an "automatic telephone dialing system";

c)  Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d)  Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

38.  *Superiority*.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the Court system could not.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the TCPA.  The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class members,

by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular telephone providers.

39. Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

40. Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

41. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CLAIM FOR RELIEF**

**Violations of the TCPA, 47 U.S.C. § 227(b)(3) & 47 U.S.C. § 227(b)(1)(A) (On Behalf of Plaintiff and the ATDS Class Members Against All Defendants)**

42. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

43. The foregoing acts and omissions constitute violations of the TCPA by Defendants, including but not limited to violations of 47 U.S.C. § 227(b)(l).

44. As a result of Defendants' violations of the TCPA, Plaintiff and all ATDS Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3).

45. As a result of Defendants' violations of the TCPA, Plaintiff and all ATDS Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

46. Plaintiff and ATDS Class members also seek an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Samuel Ledesma prays for relief and judgment in favor of himself and the Class as follows:

A. Injunctive relief prohibiting such violations of the TCPA in the future;

B. Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the ATDS Class for each of Defendants' violations of 47 U.S.C. § 227(b)(l)(A) pursuant to 47 U.S.C. § 227(b)(3);

C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

D. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

///
///
///

-12-
CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED: August 24, 2020          Respectfully submitted.

**PARKER COLE, P.C.**
By: */s/ Kevin J. Cole*

*Counsel for Plaintiff*

-13-

CLASS ACTION COMPLAINT