**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL LEDESMA, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CANNATOPIA GARDENS d/b/a CANA SYLMAR,<br><br>　　　　　Defendant. | Case No. CV 20-7690 FMO (PVCx)<br><br>**ORDER RE: MOTION FOR DEFAULT JUDGMENT** |

Having reviewed and considered Samuel Ledesma's ("plaintiff") Motion for Default Judgment, (Dkt. 14, "Motion"), against Cannatopia Gardens d/b/a Cana Sylmar ("defendant"), as well as the accompanying declaration, the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

Plaintiff is an individual who, on August 24, 2020, filed a class-action suit against defendant asserting claims under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA"). (See Dkt. 1, Complaint). The instant suit was filed following the settlement of an earlier dispute between the same parties also involving alleged violations of the TCPA. (See Dkt. 14-1, Declaration of Kevin J. Cole ("Cole Decl.") at ¶¶ 2-3). Plaintiff was the "subscriber of the cellular telephone number (805) ***-7271 (the '7271 Number')[,]" which was "assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii)." (Dkt. 1, Complaint at ¶ 15).

On August 22, 2020, defendant "transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries" two text messages to plaintiff's 7271 Number. (Dkt. 1, Complaint at ¶ 16; Dkt. 14, Memorandum of Points and Authorities ("Memo.") at 5). "The source of the unsolicited text messages . . . is from a telephone number leased by [defendant] and is used for operating Defendant['s] text message marketing program." (Dkt. 1, Complaint at ¶ 18). According to plaintiff, the messages "constituted 'advertisements' and/or 'telemarketing' material within the meaning of the applicable TCPA regulations[,]" because the messages were sent "in order to advertise and market [defendant's] goods and services, for the purpose of ultimately selling such goods and services . . . for commercial profit." (Id. at ¶ 23).

Plaintiff alleges that he never provided his prior express written consent to permit defendant to transmit the text messages to his 7271 Number. (See Dkt. 1, Complaint at ¶ 25). Telephone contact by defendant to plaintiff's 7271 Number "occurred using an automatic telephone dialing system ('ATDS') as defined by 47 U.S.C. § 227(b)(1)(A)." (Dkt. 1, Complaint at ¶ 20) (internal quotation marks omitted). "[T]he hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and to then dial such numbers [ ] in an automated fashion[,]" which defendant actually used to submit the text messages at issue. (Id. at ¶¶ 21-22).

Default was entered against defendant on October 6, 2020. (Dkt. 12, Default by Clerk). On October 21, 2020, plaintiff filed the instant Motion, seeking statutory damages and attorney's fees. (Dkt. 14, Memo. at 18).

## **LEGAL STANDARD**

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After the clerk enters default pursuant to Rule 55(a), the court may enter a default judgment against the party. See Fed. R. Civ. P. 55(b)(2). Upon entry of default, the well-pled factual allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages.

See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). The scope of relief is limited to the specific demand in the complaint. See Fed. R. Civ. P. 54(c).

Even where well-pled allegations exist, "[t]he district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion as to whether default judgment should be entered, the court considers the following factors: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (the "Eitel factors").

## DISCUSSION

I.   LOCAL RULE 55-1.

Under the Local Rules for the Central District of California, applications for default judgment must include: "(a) [w]hen and against what party the default was entered; (b) [t]he identification of the pleading to which default was entered; (c) [w]hether the defaulting party is an infant or incompetent party[;] (d) [t]hat the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) [t]hat notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)." Local Rule 55-1.

Here, plaintiff has satisfied the procedural requirements for entry of default judgment. Specifically, plaintiff has established that: (a) the Clerk entered default against defendant on October 6, 2020, (see Dkt. 12, Default by Clerk); (b) the default is based on defendant's failure to respond to the Complaint, (see id.; Dkt. 14-1, Cole Decl. at ¶ 7); (c) defendant is neither an infant nor an incompetent person, (see Dkt. 14-1, Cole Decl. at ¶ 8); (d) defendant is not in active military

service, (see id.); and (e) defendant was properly served with the summons and Complaint.[1] (See Dkt. 9, Proof of Service).

II.  THE EITEL FACTORS.

Having concluded that default was properly entered, the court will now determine whether to enter default judgment against defendant.

    A.  The Possibility of Prejudice to Plaintiff.

The first Eitel factor considers whether plaintiff will suffer prejudice if default judgment is not entered. Here, plaintiff would suffer prejudice if default judgment is not entered because he "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Accordingly, this factor weighs in favor of granting default judgment.

    B.  The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint.

"Under an Eitel analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010). These two factors require plaintiff to "state a claim on which [he] may recover[.]" Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

Plaintiff seeks default judgment as to his only claim for relief under the TCPA. (See Dkt. 1, Complaint at ¶¶ 42-46). "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). However, "[t]he third element, prior express

---

[1] With respect to the requirement of Local Rule 55-1(e), plaintiff states that defendant "is not entitled to any further notice [of this Motion] before entry of default judgment against it" under Local Rule 55-1 because defendant "has not appeared personally or [appeared] by a representative[.]" (See Dkt. 14, Memo. at 9-10). However, the court specifically ordered plaintiff to "file and serve a motion for default judgment[.]" (Dkt. 13, Court's Order of October 7, 2020) (emphasis added). Plaintiff was advised that "failure to . . . comply with the requirements set forth in [the Court's Order of October 7, 2020] . . . may result in the motion being denied and/or the action against defendant being dismissed for failure to prosecute and/or to comply with a court order." (Id.). The court will excuse plaintiff's mistake in this instance, but plaintiff is on notice that failure to comply with a court order in the future may result in sanctions.

consent, is not an element of the plaintiff's prima facie case, but is an affirmative, complete defense for which the defendant bears the burden of proof." Daniel v. Lennar Corp., 2019 WL 8194735, *4 (C.D. Cal. 2019); Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017).

Here, plaintiff alleges that defendant "transmitted or caused to be transmitted . . . numerous SMS or MMS text messages" to plaintiff's 7271 Number. (Dkt. 1, Complaint at ¶ 16); see Marks v. Crunch San Diego, LLC, 904 F.3d 1041, 1048 n. 3 (9th Cir. 2018) ("We have concluded that the TCPA applies to text messages because it is a form of communication used primarily between telephones.") (internal quotation marks omitted). Plaintiff also alleges that "[a]ll telephone contact by [defendant] to Plaintiff's 7271 Number . . . occurred using an automatic telephone dialing system [ ] as defined by 47 U.S.C. § 227(b)(1)(A)." (Dkt. 1, Complaint at ¶ 20) (internal quotation marks omitted). Plaintiff further alleges that he did not provide his "prior express written consent . . . to permit Defendant to transmit text messages to [his] 7271 Number . . . using an automatic telephone dialing system within the meaning of 47 U.S.C. § 227(b)(1)(A)." (Id. at ¶ 25) (internal quotation marks omitted). Under the circumstances, the court finds that plaintiff has sufficiently alleged a claim under the TCPA. See, e.g., Charkchyan v. EZ Capital, Inc., 2015 WL 3660315, *3-4 (C.D. Cal. 2015) (finding a TCPA claim sufficiently stated in granting default judgment).

C. The Amount of Money at Stake.

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, *12 (N.D. Cal. 2007).

Plaintiff asks for a money judgment of $3,000.00, which consists of $3,000.00 in trebled statutory damages stemming from two auto-dialed text messages sent by defendant. (See, Dkt. 14, Memo. at 13-14). Under the TCPA, a plaintiff may recover "actual monetary loss . . . or [ ] $500 in damages" for each violation, whichever is greater. 47 U.S.C. § 227(b)(3). If the court finds that defendant committed a violation "willfully or knowingly . . . [it] may, in its discretion,

increase the amount of the award to an amount equal to not more than 3 times the amount available" under the statute.  Id.

Here, plaintiff has sufficiently alleged two violations of the TCPA by defendant, which entitles plaintiff to $500 for each violation.  (See Dkt. 1, Complaint at ¶ 16).  However, the court is not persuaded that the damages should be trebled.  The court will double the damages for a total judgment of $2,000.00 as it finds that these violations were both willful and/or knowing since plaintiff had settled an earlier dispute against the same defendant for similar violations of the TCPA.  (See, Dkt. 14-1 Cole Decl. at ¶¶ 2-3).

  D. The Possibility of a Dispute Concerning Material Facts.

Upon entry of default, all well-pled allegations in the complaint are taken as true except those relating to damages.  See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  In addition, "[t]he district court is not required to make detailed findings of fact." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Since defendant did not answer the Complaint or otherwise appear in this action, (see, generally, Dkt.), it is unclear whether there would be any genuine dispute over material facts.

  E. Whether the Default Was Due to Excusable Neglect.

Excusable neglect is an equitable concept that takes account of factors such as "prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993).  Here, there is no evidence that defendant failed to defend this action due to excusable neglect.  Defendant was served with the summons and Complaint, (see Dkt. 9, Proof of Service), and failed to respond or otherwise defend itself in this action.  (See, generally, Dkt.).  In short, this factor weighs in favor of default judgment.

  F. The Strong Policy Favoring Decisions on the Merits.

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, "this preference, standing alone, is not dispositive." Kloepping v. Fireman's Fund, 1996 WL 75314, *3 (N.D. Cal. 1996).  Defendant's failure to answer plaintiff's Complaint

"makes a decision on the merits impractical, if not impossible." PepsiCo, Inc., 238 F.Supp.2d at 1177. Under Fed. R. Civ. P. 55(b), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. The court therefore finds that granting default judgment is appropriate in this action as set forth above.

      G.    Summary of the Eitel Factors.

On balance, the Eitel factors weigh in favor of granting default judgment.

III.    REMEDIES.

In addition to the damages set forth above, see supra at § II.C., plaintiff seeks (1) injunctive relief, (see Dkt. 1, Complaint at 12; Dkt. 14-2, Proposed Order Granting Plaintiff Samuel Ledesma's Motion for Default Judgment ("Proposed Order")), and (2) $9,792.50 in attorney's fees. (See Dkt. 14, Memo. at 14-18; Dkt. 14-2, Proposed Order).

Plaintiff makes no effort to address the factors necessary to obtain permanent injunctive relief. (See, generally, Dkt. 14, Memo.); see also Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv., 789 F.3d 1075, 1088 (9th Cir. 2015) ("Under well-established principles of equity, a plaintiff seeking permanent injunctive relief must satisfy a four-factor test by showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.") (internal quotation marks omitted). Plaintiff's abbreviated request for injunctive relief is plainly insufficient to satisfy the requirements for the granting of permanent injunctive relief. See, e.g., McClain v. Wells Fargo Bank, N.A., 2012 WL 851402, *3 (N.D. Cal. 2012) (rejecting defendants' "undeveloped argument" because they "neither cited any legal authority nor provided the requisite legal analysis"); Global Horizons, Inc. v. U.S. Debt. of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (Because plaintiff "provided only a conclusory one-sentence argument . . . the district court did not abuse its discretion when it did not address them specifically in its order."); see also Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

The court next turns to plaintiff's request for attorney's fees. Plaintiff requests, pursuant to the court's equitable powers as explained in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943 (1973), that the court award $9,792.50 in attorney's fees. (See Dkt. 14, Memo. at 14-15). "[F]ederal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." Hall, 412 U.S. at 4-5, 93 S.Ct. at 1946. "[I]t is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 5, 93 S.Ct. at 1946 (internal quotation marks omitted). "[T]he underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." Id.

Here, plaintiff argues that "a significant amount of [invested] attorney time[,]" the "encourage[ment] [of] plaintiffs to pursue TCPA actions[,]" and the "prevent[ion] [of] defendants like Cannatopia Gardens from avoiding liability by simply ignoring the lawsuit" weigh in favor of an award of fees, which are "necessary to send the right message to [defendant]." (Dkt. 14, Memo. at 15). The court disagrees. "[T]he traditional American rule ordinarily disfavors the allowance of attorney's fees in the absence of statutory or contractual authorization[.]" Hall, 412 U.S. at 4, 93 S.Ct. at 1945-46 (footnotes omitted). Here, beyond plaintiff's speculation as to defendant's failure to appear, (see Dkt. 14, Memo. at 7, 15), the record shows no evidence of bad faith – "the essential element in triggering the award of fees" under this exception to the rule. See Hall, 412 U.S. at 5, 93 S.Ct. at 1946.

The court will, however, award attorney's fees to plaintiff pursuant to Local Rule 55-3. Under the Local Rule, for a judgment between "$1,000.01 – $10,000[,]" the attorney's fee award will be calculated as "$300 plus 10% of the amount over $1,000[.]" Local Rule 55-3. Applying this schedule to plaintiff's default judgment of $2,000, the court will award $400 in attorney's fees.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Default Judgment **(Document No. 14)** is **granted** as set forth in this Order.

2. Default judgment shall be entered in favor of plaintiff Samuel Ledesma and against defendant Cannatopia Gardens d/b/a Cana Sylmar.

3. Defendant Cannatopia Gardens d/b/a Cana Sylmar shall pay plaintiff the total amount of $2,400.00, which is comprised of (a) doubled statutory damages for violations of the TCPA in the amount of $2,000.00; and (b) attorney's fees in the amount of $400.00.

4. The class allegations in the Complaint (Document No. 1) are dismissed without prejudice.[2]

5. Plaintiff shall serve defendant with a copy of this Order and the contemporaneously-filed Judgment in such a manner as to make them operative in any further proceedings.

Dated this 30th day of November, 2020.

                                                        /s/
                                      Fernando M. Olguin
                                    United States District Judge

---

[2] Because plaintiff seeks default judgment only as to his individual claims, and having reviewed the case file and determined that no prejudice to the putative class will result, the court will dismiss the class allegations without prejudice.